FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN -2 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LG CAPITAL FUNDING, LLC,

                Plaintiff,

   -against-

VAPE HOLDINGS, INC.,

                Defendant.
-----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-2217 (CBA) (LB)

**AMON, United States District Judge:**

On May 3, 2016, plaintiff LG Capital Funding, LLC ("LG") filed a complaint against defendant Vape Holdings, Inc. ("VHI") alleging breach of contract, anticipatory breach of contract, and conversion arising out of VHI's failure to comply with the terms of the $75,000, 8% Convertible Redeemable Note (the "Note") VHI issued to LG. (D.E. # 1 ("Compl.").) On the same day, LG filed a motion for a preliminary injunction to require VHI to (1) provide fully executed "Irrevocable Transfer Agent Instructions" to a designated transfer agent instructing it to reserve shares of VHI common stock as required by the Note; (2) deliver previously requested shares of VHI common stock to LG, along with the necessary corporate resolutions to enable LG to sell the stock publicly without restrictions; (3) honor all conversion requests submitted during the pendency of this action; and (4) take all necessary steps to increase the authorized shares of VHI common stock so as to comply with the terms of the Note. (D.E. # 2.) On May 5, 2016, the Court ordered VHI to show cause why a preliminary injunction should not be issued. (D.E. # 6.) On May 27, 2016, the Court held an evidentiary hearing on the motion for a preliminary injunction. For the reasons that follow, LG's motion is denied.

1

## FACTUAL FINDINGS

The following factual findings are based on the declarations and exhibits submitted to the Court prior to the preliminary-injunction hearing, which the Court found credible.

### a. The Parties

LG is a New York limited liability company with its principal place of business in Brooklyn, New York. (D.E. # 2-5 ("Lerman Decl.") ¶ 6.) VHI is a Nevada corporation with its principal place of business in Agoura Hills, California. (Id. ¶ 7.) VHI is "a holding company with its primary focus in the manufacturing and distribution of healthy and sustainable vaporization products." (D.E. # 2-7 ("Dec. 2015 Quarterly Report") at 6.) This Court has jurisdiction over this dispute pursuant to 28 U.S.C § 1332 in that the action is between citizens of different states and the matter in controversy exceeds $75,000.

### b. The Note

On or about August 5, 2015, VHI issued the Note to LG. (Lerman Decl. ¶ 9; D.E. # 1-1 ("Note").) The Note entitles LG to convert the outstanding balance owed on the Note into shares of VHI's common stock at a price per share "equal to 58% of the lowest trading price reported . . . for the thirteen prior trading days" including the day upon which the request is received. (Lerman Decl. ¶¶ 10–12; Note § 4(a).) In order to satisfy any conversion requests, the Note requires that VHI maintain a reserve containing "a minimum of four times the amount of shares required if the Note would be fully converted." (Lerman Decl. ¶ 13; Note § 12.) LG represents that "[t]he conversion feature was essential in inducing LG to enter into the Note" because investing in VHI "came with significant risk due to its unstable financial condition" and the conversion feature allowed LG to "earn a return commensurate with the risk." (Lerman Decl. ¶ 14.) "LG's ability to

obtain stock at a discount to the market price then resell it in the open market" allowed "LG to obtain a return on its investment from third parties . . . at a significantly higher rate of return." (Id.)

### c. The Alleged Breach

On or about February 26, 2015, LG submitted a "Notice of Conversion" for a portion of the balance owed on the Note. (Id. ¶ 15.) Specifically, LG sought to convert $1,695 of principal and $73.56 of accrued interest into 1,604,863 shares of VHI's common stock, representing a conversion price of $.001102 per share. (Id.) VHI failed to honor this Notice of Conversion. (Id. ¶ 16.) As a result, LG sent VHI a letter dated March 23, 2016, informing VHI that its "failure to issue shares of Common Stock upon conversion of the Note and [its] failure to reserve a sufficient number of shares of Common Stock" constituted an "Event of Default" under the Note. (Id. ¶ 17.) The Note provides that "Events of Default" include failing to deliver shares pursuant to a Notice of Conversion, (Note § 8(k)), failing to replenish the required reserves, (id. § 8(l)), and breaching VHI's representation that the Note holder can "at any time" convert the remaining principal into shares of VHI's common stock and that VHI will maintain a reserve to allow for such conversion, (id. § 8(b)).

### d. VHI's Financial Condition

LG claims that VHI "is unquestionably in poor financial condition" in light of VHI's "limited revenue" and "limited cash flow." (Lerman Decl. ¶ 3.) In support of this claim, LG presents VHI's December 31, 2015, Quarterly Report to the Securities and Exchange Commission ("SEC") (the "December 2015 Quarterly Report"). VHI's December 2015 Quarterly Report "reflect[s] a net loss of $1,126,720," "cash of $47,605," "a capital deficit of $331,421," and "an accumulated deficit of $27,737,762" for the three months ending December 31, 2015. (Id. ¶ 3 (citing Dec. 2015 Quarterly Report at 7).) LG notes that despite VHI's "unwillingness to comply"

3

with its outstanding convertible notes, such as the Note at issue in this case, VHI nearly doubled its total convertible debt obligations during the last quarter of 2015. (Id. ¶ 24 (citing Dec. 2015 Quarterly Report at 27).) In the December 2015 Quarterly Report, VHI acknowledges that "[d]ue to declining market price of [VHI]'s common stock, the noteholders have reserve claims in excess of the common stock authorized," and that VHI "has determined at this time not to increase the authorized share count and is instead in discussions with its convertible noteholders about consolidation, restructuring and/or buy-out." (Id. (citing Dec. 2015 Quarterly Report at 23).)

In response, VHI notes that the December 2015 Quarterly Report also indicates that "VHI had $688,929 in current assets, revenue of $246,828 for the quarter and gross profit of $41,419." (D.E. # 13 ("Braune Decl.") ¶ 10; see Dec. 2015 Quarterly Report at 2–3.) VHI explains that "[d]ue to certain non-cash, line item expenses, including certain adjustments to interest expenses, VHI ended the quarter with a net loss" and that this "is not uncommon for an emerging growth company." (Braune Decl. ¶ 10.) VHI also presents its September 30, 2014, and September 30, 2015, Annual Reports to the SEC, which show that VHI "generated annual revenues of $841,724 for 2014 and $1,277,657 for 2015." (Id. ¶ 11; see D.E. # 13-4 (September 2015 Annual Report); D.E. # 13-5 (September 2014 Annual Report).)

In further support of its financial status, VHI states that in February 2016, another investor, GHS Investments, LLC ("GHS") offered to purchase up to $1,000,000 of the convertible notes. (Braune Decl. ¶ 6; see D.E. # 13-1 (Securities Purchase Proposal between VHI and GHS).) On April 19, 2016, "GHS and VHI entered into an Investment Agreement, under which GHS agreed to purchase up to $5 million in VHI's shares over a three year period," and as a result "wholly apart from its revenue, VHI has ample financial resources to draw on over the next three years." (Braune Decl. ¶ 8; see D.E. # 13-2 (Investment Agreement between VHI and GHS).)

4

## STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat'l Res. Def. Council, 555 U.S. 7, 20 (2008); Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 825 (2d Cir. 2015). Preliminary injunctive relief is an extraordinary remedy that requires the plaintiff to carry the burden of persuasion by a clear showing for each factor. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

Courts in this Circuit hold plaintiffs to a "heightened standard" where: "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) (quoting Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33–34 (2d Cir. 1995)). When either condition is met, the plaintiff "must show a 'clear' or 'substantial' likelihood of success on the merits, and make a 'strong showing' of irreparable harm." Id. (quoting Beal v. Stern, 184 F.3d 117, 123 (2d Cir. 1999); Doe v. N.Y. Univ., 666 F.2d 761, 773 (2d Cir. 1981)).

## LEGAL CONCLUSIONS

As an initial matter, the Court concludes that the preliminary injunction LG requests, which would require VHI to deliver shares of common stock, honor future conversion notices, and execute the necessary agreements and corporate resolutions to effectuate such transfers, is a mandatory injunction. See Tom Doherty Assocs., Inc., 60 F.3d at 34 (defining a mandatory injunction as one that "alter[s] . . . the status quo by commanding some positive act"). LG must therefore must meet the heightened standard for mandatory injunctions discussed above.

## I. Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). A plaintiff must, therefore, "show that injury is likely before the other requirements for an injunction will be considered." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002). To satisfy this requirement, "plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Faiveley Transp. Malmo AB, 559 F.3d at 118 (internal quotation marks and citation omitted). In assessing a plaintiff's claim of irreparable harm, courts must pay "particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (internal quotation marks and citation omitted). If the movant fails to make a showing of irreparable harm, the motion for a preliminary injunction should be denied. See Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999).

LG argues that monetary damages will be inadequate for two reasons: (1) because it will be difficult to determine the monetary damages to which it is entitled; and (2) because VHI is insolvent or likely to become insolvent in the near future.

### a. Difficulty Determining Damages

LG first argues that monetary damages are insufficient because "any damages ultimately awarded" in this case "will prove exceedingly difficult to establish with precision." (D.E. # 2-1 ("Mem. in Support") at 3.) The uncertainty, LG argues, arises from the fact that "[t]he dates upon which LG would have sold the stock it did not receive, and the amounts LG would have realized

from any such sales, will be difficult to establish with any degree of certainty." (Id. at 10.) As a result, LG argues, the only way to remedy VHI's breach is to deliver the shares to LG and allow "the market itself to decide when and at what price it is willing and able to part with the shares." (D.E. # 17 ("Reply Mem.") at 4.)

Difficulty calculating damages can be a factor favoring injunctive relief. See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68–69 (2d Cir. 1999). However, no such difficulty is present in this case. As VHI notes, there is "no need to engage in speculation concerning what LG might have done if it had received the conversion shares . . . because the law mandates a calculation of damages on a single, specific date." (D.E. # 12 ("Mem. in Opp.") at 11.) It is a "fundamental principle that damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 262 (2d Cir. 2002) (stating that "New York's damages rule is precisely the same when the breach of contract is nondelivery of shares of stock"). "[W]here the breach involves the deprivation of an item, such as a stock, with a determinable market value, the market value at the time of the breach is the measure of damages." Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 825 (2d Cir. 1990) (citing Simon v. Electrospace Corp., 28 N.Y.2d 136, 145 (1971)). Courts have therefore rejected the contention that in order to calculate damages it would necessary to speculate when and if a plaintiff would sell its stock. See, e.g., Laurus Master Fund, Ltd. v. Valcom, Inc., No. 02-CV-1480 (WK), 2002 WL 432686, at *3 (S.D.N.Y. Mar. 19, 2002) ("If we were to find irreparable harm based on this argument alone then every case involving a contract to convert stock would amount to per se irreparable harm."). "Measuring contract damages by the value of the item at the time of the breach is eminently sensible and actually takes expected lost future profits into account," insofar as "[t]he value of assets for which there is a market is the

discounted value of the stream of future income that the assets are expected to produce, . . . includ[ing] expected future profits and/or capital appreciation." Sharma, 915 F.2d at 826. The Court therefore rejects LG's claim that calculating damages will be sufficiently difficult to necessitate injunctive relief.

### b. Imminent Insolvency

LG next argues that monetary damages will be inadequate because it is unlikely to be able to ultimately recover from VHI. LG argues that VHI "is insolvent, or likely to be so in the near future" and that as a result LG is "highly unlikely to recover on any damages awarded at the conclusion of [this] litigation." (Mem. in Support at 2.) LG specifically claims that VHI's "high net loss and limited revenue, as well as the company's own substantial doubts about the ability of [VHI] to continue as a going concern without further investment raise doubts as to [VHI]'s ability to pay back the principal and interest on the Note." (Id.) LG rests its claim of imminent insolvency on VHI's most recent SEC filing, emphasizing VHI's high capital deficit, rapid increase in convertible debt payable, continued efforts to accrue more convertible debt obligations, and admissions that "the ongoing need to obtain financing to fund operations . . . raises substantial doubt about the ability of [VHI] to continue as a going concern." (Id. at 9–10.)

The Second Circuit has recognized an exception to the general rule that a monetary injury does not constitute irreparable harm in "situations involving obligations owed by insolvents." Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249–50 (2d Cir. 1999). Before a court will grant relief under this exception, however, the plaintiff "must show that the risk of insolvency is likely and imminent." See CRP/Extell Parcel I, L.P. v. Cuomo, 394 F. App'x 779, 782 (2d Cir. 2010) (citing Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007); Winter, 555 U.S. at 22).

Although VHI's most recent quarterly filing is concerning, LG does little more than recite statistics from this filing. LG makes no efforts to explain why these statistics make insolvency "imminent." In addition, LG fails to respond in any meaningful way to VHI's showing that it has generated revenue for the past two years and recently received additional investment from GHS that will allow it to resolve issues with its outstanding convertible notes. Judge Sullivan in the Southern District of New York recently denied a motion for a preliminary injunction against VHI based on substantially similar evidence, concluding that the plaintiff in that case failed to sufficiently rebut VHI's representations that the company had "continued interest from investors" and would continue to "progress towards achieving profitability." Union Capital LLC v. Vape Holdings Inc., No. 16-CV-1343 (RJS), D.E. # 18 at 7–8 (S.D.N.Y. Mar. 9, 2016). Although Judge Sullivan's opinion is not binding on this Court, it is persuasive and supports the Court's conclusion that LG has failed to show that VHI is imminently insolvent. LG has "at most, shown that there is a possibility that the company may be insolvent by the time this case is fully litigated; that mere possibility is speculative and cannot satisfy [LG]'s burden to show that it is likely to suffer irreparable harm." Meringolo v. Power2ship Inc., No. 03-CV-4476 (PKL), 2003 WL 21750009, at *5 (S.D.N.Y. July 28, 2003) (citing JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990); Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)). The Court concludes that LG has therefore failed to make the strong showing of irreparable harm required to issue a mandatory injunction.

## CONCLUSION

For these reasons, LG's motion for a preliminary injunction is DENIED.

SO ORDERED.

Dated: June    /    , 2016
       Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon /
United States District Judge